**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **ELIE C. JONES,** | : | |
| Plaintiff, | : | Civil Action No. 14-6778 (ES) |
| v. | : | OPINION |
| **CAROLYN COLVIN,** **Acting Commissioner of Social Security,** | : | |
| Defendant. | : | |

**SALAS, DISTRICT JUDGE**

Before the Court is *pro se* Plaintiff Elie C. Jones's appeal seeking review of Administrative Law Judge Dennis O'Leary's ("ALJ" or "ALJ O'Leary") decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the ALJ's decision is affirmed.

**I.  BACKGROUND**

Forty-year-old Plaintiff alleges disability due to numerous impairments, including sleep apnea, back and knee problems, obesity, asthma, and depression. (D.E. No. 8, Administrative Record ("Tr.") at 47, 176-83). Plaintiff first identified as having these impairments when he was thirty-four years old. (*Id.* at 176-83). Plaintiff has an associate's degree from Berkley College in business management and at least six years of work experience as a manager of a car rental agency.

(*Id.* at 44-46).  Plaintiff stopped working in April 2006, due to his back problems and asthma.  (*Id.* at 45).

Plaintiff first applied for DIB and SSI with the Social Security Administration on September 19, 2011, alleging a disability onset date of August 5, 2008.  (*Id.* at 176-183, 199).  His claims were initially denied on February 27, 2012.  (*Id.* at 110-15).  Plaintiff's claims were again denied after reconsideration on May 30, 2012.  (*Id.* at 119-20).  Plaintiff then requested a hearing with an ALJ, and on June 12, 2013, ALJ Dennis O'Leary held a hearing on the matter.  (*Id.* at 38-67).  On July 12, 2013, ALJ O'Leary issued a written opinion, finding that Plaintiff's disability did not qualify for benefits and denying Plaintiff's request for DIB and SSI.  (*Id.* at 19-37).

Plaintiff requested review of the ALJ's decision, and the Appeals Council denied his appeal on October 7, 2014.  (*Id.* at 1-5).  Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  (*Id.*; *see also* 20 C.F.R. § 404.981).

On October 29, 2014, Plaintiff appealed the Commissioner's decision by filing the Complaint in this action.  (D.E. No. 1).  The Administrative Record was filed on February 15, 2015.  (D.E. No. 8).  Plaintiff failed to file a brief within seventy-five days of receipt of the Administrative Record, pursuant Local Civil Rule 9.1(e)(1).  (*See* D.E. No. 10).  Accordingly, the Court administratively terminated Plaintiff's appeal and instructed Plaintiff to file a brief.  (*See id.*).  The parties subsequently briefed the issues raised on the instant appeal.  (D.E. No. 11, Letter from Elie C. Jones filed on December 21, 2015 ("Pl. Mov. Br."); D.E. No. 12, Defendant's Brief Pursuant to Local Rule 9.1 filed on February 2, 2016 ("Def. Opp. Br.")).  The matter is now ripe for resolution.

## II. LEGAL STANDARD

### A. Standard for Awarding Benefits

To be eligible for DIB under Titles II and XVI of the Act, a claimant must establish that he or she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the inquiry ends. *Id.* The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1] At step five, the burden shifts to the Commissioner. *Id.*

***Step One.*** At step one, the claimant must demonstrate that he is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. *Id.* §§ 416.972(a), (b). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

3

experience. *Id*. § 404.1520(b). If the claimant demonstrates he is not engaging in substantial gainful activity, the analysis proceeds to the second step.

***Step Two.*** At step two, the claimant must demonstrate that his medically determinable impairment or the combination of impairments is "severe." *Id.* § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec*., No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

***Step Three.*** At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 416.920(d).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Not inconsistent does not mean that the opinion must "be supported directly by all of the other evidence [i.e., it does not have to be consistent with all the other evidence] as long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided."

4

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).  "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  *Id.*

*Step Four.*  If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant lacks the RFC to perform any work he has done in the past, the analysis proceeds.

*Step Five.*  In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his RFC and vocational factors.  *Id.* § 404.1520(a)(4)(v).

### B.  Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).  "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  While failure to meet the substantial evidence standard normally

5

warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

## III. DISCUSSION

On appeal, *pro se* Plaintiff requests that his social security application be approved.[2] (Pl. Mov. Br. at 2). Plaintiff does not allege any specific errors in the ALJ's decision. Rather, Plaintiff merely lists the reasons why his impairments—sleep apnea, obesity, herniated disks, depression, and arching of the spine—prevent him from working. (*Id.* at 1-2). Defendant focuses on Plaintiff's RFC and counters that substantial evidence supports the ALJ's RFC findings. (Def. Opp. Br. at 12).

The Court finds that the record contains substantial evidence to support the ALJ's

---

[2] Because it is unclear from Plaintiff's brief whether he is challenging the ALJ's conclusion that he was not disabled or the ALJ's RFC determination, the Court will address both conclusions. (*See* Pl.'s Mov. Br. at 1-2).

conclusions regarding Plaintiff's impairments and RFC. The Court addresses each conclusion below.

### A. Plaintiff's Impairments

On appeal, Plaintiff contends that he suffers from numerous impairments that prevent him from working. (Pl. Mov. Br. at 1-2).

#### 1. Step Two

At step two, the ALJ reached a decision in Plaintiff's favor. There, the ALJ identified that Plaintiff suffered from several severe impairments, including back disorders, obesity, sleep apnea, degenerative joint disease, asthma, and depression. (Tr. at 24). The ALJ observed that "[t]hese impairments impose more than a slight vocational limitation on the claimant's ability to perform work related activity for 12 consecutive months and are 'severe' as defined in the Regulations." (*Id.*). But the ALJ also determined that Plaintiff's mental impairments did not meet or medically equal the Social Security Administration's listing requirements of severity for Listing Sections 12.04 (affective disorders) or Section 12.09 (substance addiction disorders). (*Id.*). The ALJ further determined that Plaintiff's mental impairments only caused mild limitations to Plaintiff's daily living, social functioning, and concentration, and did not cause any episodes of decompensation.[3] (*Id.* at 24-26).

The ALJ's step-two conclusion is supported by substantial evidence. Regarding Plaintiff's daily living, the ALJ noted that Plaintiff uses public transportation, drives a car, cares for his two minor children, manages his personal care with assistance, shops for food once a month, does

---

[3] These four criteria, the "Paragraph B" criteria, are used to alternatively show that a mental impairment is severe. *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d). Each criterion requires a showing of a "marked limitation," meaning an impact that is "more than moderate but less than extreme." 20 C.F.R. Part 404, Subpt. P, App. 1. Because the ALJ found only mild impacts for the first three criteria, and no impact for the fourth criterion, the ALJ concluded that Plaintiff's mental impairment was "nonsevere." (Tr. at 25-26; *see also* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).

laundry, and watches television. (*Id.* at 25). As to Plaintiff's social functioning, the ALJ concluded that the limitation was mild because Plaintiff has a relationship with his children, mother, and girlfriend, is able to socialize on the phone and computer, and has no problem getting along with family, friends, and neighbors. (*Id.*). Regarding Plaintiff's concentration, persistence, or pace, the ALJ considered Plaintiff's depression. (*Id.*). The ALJ concluded, however, that the limitation was mild because Plaintiff did not require recurrent hospital visits, he reported improvement in his conditions with medication, and his Global Assessment of Functioning was 70 (which is consistent with mild symptoms). (*Id.*). Finally, the ALJ determined that Plaintiff did not experience episodes of decompensation. (*Id.*). Accordingly, the ALJ's determination as to Plaintiff's mental impairments at step two is supported by substantial evidence.

    2.  *Step Three*

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments. (*Id.* at 26). At this step, an ALJ must determine the medical severity of an alleged disability by comparison to the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Claimants must present sufficient evidence to show that their impairment, or combination of impairments, is equivalent to a listed impairment. *Williams*, 970 F.2d at 1186. Furthermore, "[t]he ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). "Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Id.* For the reasons below, the Court concludes that the ALJ's step-three determination is supported by substantial evidence.

### a. *Spinal Impairments: Listing 1.04*

At step two, the ALJ determined that Plaintiff's back disorders were severe. (*Id.* at 24). But at step three, the ALJ considered Plaintiff's spinal impairments under Listing 1.04 and concluded that the impairments failed to meet the listing. (*Id.* at 26). In particular, the ALJ noted that "the evidence fail[ed] to demonstrate the existence of a 'herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture' which results in the compromise of a nerve root or the spinal cord along with the requirements of A, B, or C of this listing." (*Id.*).

Although the evidence demonstrates that Plaintiff suffered from mild bulging discs and mild spinal stenosis (*id.* at 28), the record fails to disclose any evidence of the requisite findings under Listing 1.04A, B, or C, which require a showing of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . and . . . positive straight-leg raising test," "spinal arachnoiditis," or "lumbar spinal stenosis resulting in pseudoclaudication," respectively. 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04. Specifically, Plaintiff's October 27, 2011 MRI showed two mild disc bulges with mild stenosis, with no showing of nerve damage or compression. (Tr. at 372-73). Likewise, Dr. Hoffman's internal medicine examination of Plaintiff also found bulging disks, but concluded that although Plaintiff walks with a cane, he appears to be able to walk without it. (*Id.* at 432). Thus, the record displayed no evidence of Listing 1.04's A, B, or C criteria. As such, the Court finds that substantial evidence supports the ALJ's conclusion on Listing 1.04.

### b. *Degenerative Joint Disease: Listing 1.02*

At step two, the ALJ determined that Plaintiff's degenerative joint disease was a severe impairment. At step three, the ALJ concluded that Plaintiff's knee-joint impairment failed to

9

medically equal the requirements of Listing 1.02. In particular, the ALJ determined that, pursuant to the requirements of Listing 1.02, there was no evidence of

> gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint with involvement of one major peripheral weight-bearing joint resulting in the inability to ambulate effectively.

(*Id.* at 26). Substantial evidence supports the ALJ's determination. Specifically, the ALJ highlighted Dr. Hoffman's internal medicine examination, which stated that (i) Plaintiff "walk[ed] with a cane, but appear[ed] to be able to walk without it"; (ii) "[f]lexion and extension at the knee appear to be slightly diminished . . . but there is no swelling and . . . no crepitus"; (iii) Plaintiff was "able to put weight on either leg"; and (iv) Plaintiff had "full range of motion" in his upper extremities and "can bend at the knees maybe about halfway." (*Id.* at 432-33). Thus, the record supports only mild joint impairments, and the ALJ's conclusion on Listing 1.02 is supported by substantial evidence.

### c. *Asthma: Listings 3.02 and 3.03*

At step two, the ALJ determined that Plaintiff's asthma was a severe impairment. At step three, the ALJ concluded that Plaintiff did not meet the testing requirements for chronic pulmonary insufficiency (Listing 3.02), and did not have the required number of attacks for an asthma disability (Listing 3.03). (*Id.* at 26). Dr. Hoffman stated that Plaintiff's pulmonary function test showed a total vital capacity at one-hundred percent of the expected value, and that Plaintiff's one-second forced expiratory volume was at eighty-one percent of the expected value. (*Id.* at 433). Indeed, Dr. Hoffman concluded that those tests constituted "better than normal pulmonary function test response." (*Id.*). Furthermore, the record does not demonstrate that Plaintiff suffered asthmatic attacks as frequently as required by Listing 3.03. *See* 20 C.F.R. Part 404, Subpt. P, App.

1, § 3.03 (requiring asthma attacks "at least once every 2 months or at least six times year"). Thus, the ALJ's determination as to Plaintiff's asthma is supported by substantial evidence.

### d. *Sleep Apnea: Listing 3.10*

At step three, the ALJ concluded that Plaintiff's sleep-related breathing disorders did not meet the requirements of Listing 3.10. (Tr. at 26). In particular, the ALJ determined that the record failed to contain clinical evidence of "cor pulmonale" or "organic mental disorders," as required to show a sleep-related breathing disorder disability. (*Id.*). Although Plaintiff has an extensive medical history regarding sleep apnea (*see* Tr. at 27-29), the condition was "adequately treated" with the CPAP mask (*id.* at 31-32; *see also id.* at 252, Holy Name Medical Center, Center for Sleep Medicine Sleep Study (stating that Plaintiff exhibited "improved sleep architecture" with use of CPAP)). Accordingly, the ALJ's determination as to Plaintiff's sleep apnea is supported by substantial evidence.

### e. *Obesity*

At step two, the ALJ determined that Plaintiff's obesity was a severe impairment. (*Id.* at 24). Although obesity is not a listed disability, "an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing." Social Security Ruling ("SSR") 02-1P, 67 Fed. Reg. 57859, 57862 (Sept. 12, 2012). Furthermore, the Social Security Administration "will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." *Id.* Thus, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504.

Here, ALJ O'Leary considered Plaintiff's obesity both individually and in combination

with his other impairments. Plaintiff points to no evidence in the record to illustrate that the ALJ failed to appropriately consider obesity. Indeed, the ALJ, in accordance with several sections throughout Appendix 1, namely 1.00Q, 3.00I, and 4.00I(1), "fully considered obesity in the context of the overall record in making" a determination at step three. (Tr. at 26). Accordingly, the ALJ did not err in considering obesity.

Based on the foregoing, the Court concludes that the ALJ's step-three determinations are supported by substantial evidence.

### B. Plaintiff's RFC

The Court turns to the ALJ's conclusion that Plaintiff had the RFC to engage in "light work as defined in 20 CFR 404.1567(b)." (*Id.* at 27). In evaluating an individual's RFC, an ALJ "must have evaluated all relevant evidence." *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013). The ALJ must further have "explained [his] reasons for rejecting any such evidence" and "also must have given the claimant's subjective complaints serious consideration." *Id.*

In reaching his RFC determination, the ALJ followed a two-part test: (i) the ALJ considered whether Plaintiff had "medically determinable . . . impairment(s) that could reasonably be expected to produce [his] symptoms"; and (ii) the ALJ evaluated "the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit his functioning." (Tr. at 27; *see also* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c)). The ALJ added that he had "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*).

ALJ O'Leary's light work RFC determination is supported by substantial evidence. Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.156(b). In addition, the ALJ added that

Plaintiff "must avoid exposure to dust, fumes, odor and pulmonary irritants due to asthma; and he must avoid exposure to heights and dangerous machinery due to residuals of his sleep apnea." (Tr. at 27). In reaching the RFC determination, the ALJ considered the full breadth of Plaintiff's medical history, as well as Plaintiff's presence and testimony at the hearing. (*Id.* at 27-29). Indeed, Plaintiff does not point this Court to any evidence in the record that the ALJ left unturned. Importantly, the ALJ noted that Plaintiff might have difficulties performing heavy work, but noted that the record was devoid of any evidence that would preclude Plaintiff from performing light work. (*Id.* at 31).

To start, the ALJ considered Plaintiff's subjective testimony regarding his impairments. The ALJ determined that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning intensity, persistence and limiting effect of those symptoms are not entirely credible." (*Id.* at 30). Plaintiff testified that he suffers from significant back pain, rating his pain at a nine. (*Id.* at 29). But the ALJ concluded that the evidence failed to support the degree of pain alleged. (*Id.* at 30). Indeed, a 2011 MRI revealed "mild" disc bulges, and Plaintiff's doctors opined that conservative therapy was adequate to treat his pain. (*Id.* at 30, 372). Moreover, Plaintiff testified that he never had surgery or epidural injections. (*Id.*).

Plaintiff also testified that he had marked difficulties with standing, walking, sitting, lifting, and carrying, which the ALJ found to be "in variance with the medical evidence." (*Id.*). Plaintiff testified, and the medical evidence shows, that he walks with a cane. Dr. Hoffman noted, however, that Plaintiff was also able to walk without a cane. (*Id.* at 432). Nevertheless, the ALJ considered the injury sustained to Plaintiff's knee during an automobile accident, but ultimately concluded that it was adequately treated with medication and physical therapy. (*Id.* at 30). Moreover, Dr.

13

Hoffman noted a full range of motion in Plaintiff's upper extremities with no evidence of deficits. (*Id.* at 433).

The ALJ also considered the effects of Plaintiff's sleep apnea. In particular, the ALJ noted that Plaintiff appeared to "close his eyes a lot" at the beginning of the hearing, but ten minutes later, Plaintiff appeared to be alert and able to stay awake. (*Id.* at 31). Moreover, the ALJ again noted that Plaintiff's sleep apnea is adequately treated with the CPAP mask and that Plaintiff is able to live alone, use public transportation, and drive a car, thus indicating that his daily activities are not "significantly compromised" by his sleep apnea. (*Id.*). Ultimately, the ALJ "incorporated any limitations this impairment might impose" on Plaintiff's RFC. (*Id.*).

Similarly, the ALJ considered Plaintiff's asthma and stated that, "[b]ased on the evidence, and giving the claimant the benefit of the doubt," any limitations derived from Plaintiff's asthma would be considered in the RFC. (*Id.*).

Furthermore, the ALJ properly weighed and considered the conflicting expert testimony, giving Dr. Paul Cummo's[4] and Dr. Kenneth Conte's expert reports less weight because they were inconsistent with other medical reports and were unsupported by any clinical findings. (*Id.* at 32). Dr. Cummo's report, for example, opined that Plaintiff suffered from moderate-to-extreme limitation with respect to work-related mental activities. (*Id.* at 490-92). Evidence in the record, however, contradicts Dr. Cummo's conclusion—namely, the treatment records from the Hackensack University Medical Center, which showed a GAF of 70, and Plaintiff's improvement with prescription medication. (*Id.* at 32; *see also id.* at 459-64). Likewise, Dr. Conte's opinion that Plaintiff had work limitations with respect to walking, climbing, stooping, bending, and lifting

---

[4] The ALJ mistakenly refers to Dr. Cummo as Dr. Casano. It is clear from the record that the ALJ is referencing Dr. Cummo because the ALJ cites the June 10, 2013 Medical Source Statement at Exhibit 14F (which was administered by Dr. Cummo, not Dr. Casano).

14

(*id.* at 495), is contradicted by other evidence in the record—as detailed above. The ALJ was well within his discretion to afford these reports less weight. *See, e.g.*, *Sherman v. Colvin*, No. 15-281, 2015 WL 4727298, at *14 (M.D. Pa. Aug. 10, 2015) (finding no error where the ALJ "provided reasons for his determination," including inconsistencies in the record).

Accordingly, the ALJ's determination that Plaintiff has an RFC to perform light work is also supported by substantial evidence.

### IV. CONCLUSION

For the foregoing reasons, the Court affirms ALJ O'Leary's decision. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**